UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANTHONY ROY HARRISON,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>BRENT FLUKE[1],<br><br>　　　　　　Respondent. | 5:21-CV-5041-JLV<br><br>REPORT AND RECOMMENDATION REGARDING RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 10) |

## INTRODUCTION

This matter is before the court on Petitioner Anthony Roy Harrison's *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Mr. Harrison filed the pending habeas petition on July 19, 2021. Id. Respondent filed a Motion for Judgment on the Pleadings on March 8, 2022. (Doc. 10). The pending matter was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTS

Mr. Harrison pled guilty to Counts 1, 2, and 7 of the Indictment which charged Grand Theft, Forgery, and Unauthorized Possession of a Controlled

---

[1] In its Order to Show Cause, the court incorrectly captioned the case to name Brent Fluke and Jason Ravonsburg. The proper named party is Brent Fluke who is the Warden of the Mike Durfee State Prison where Petitioner Anthony Roy Harrison is incarcerated. Respondent's Motion to Substitute (Doc. 8) is Granted.

1

Substance, respectively. (Doc. 13-2). On June 12, 2020, Mr. Harrison was sentenced by the Honorable Jane Wipf Pfeifle of the Seventh Judicial Circuit in the State of South Dakota to serve ten years (10) years in the South Dakota State Penitentiary, with three years suspended for Count 1; five years (5) with one year suspended for Count 2; and three years (3) with one year suspended for Count 7. All sentences were ordered to be served concurrently. Mr. Harrison received credit for time served in the amount of thirty-one (31) days. (Doc. 13-2). The Amended Judgement was filed on July 8, 2021. Mr. Harrison did not file a direct appeal to the South Dakota Supreme Court.

Mr. Harrison filed an Application for Writ of Habeas Corpus Petition in his state court criminal case claiming that the State of South Dakota lacked jurisdiction to prosecute him relying on the Fort Laramie Treaty of 1868 and the McGirt v. Oklahoma, 140 S.Ct. 2452 (2020), decision. (Doc. 13-6). The Honorable Craig A. Pfeifle denied Mr. Harrison's application on the grounds that the habeas petition was barred by res judicata in that Mr. Harrison failed to raise a jurisdiction challenge in a direct appeal to the South Dakota Supreme Court. (Doc. 13-9). Additionally, in his order, Judge Craig A. Pfeifle addressed the substance of Mr. Harrison's petition and held that Mr. Harrison's claim that the state court lacked jurisdiction under McGirt v. Oklahoma, 140 S.Ct. 2452 (2020), was without merit. Mr. Harrison sought a certificate of probable cause to appeal Judge Craig A. Pfeifle's ruling to the South Dakota Supreme Court; the request was denied. Mr. Harrison filed

motions for certificates for probable cause with the South Dakota Supreme Court. Those motions were denied on June 25, 2021. (Doc. 1-1 at p. 34).

Mr. Harrison filed the pending federal 28 U.S.C. § 2254 habeas petition on July 19, 2021. (Doc. 1). The Respondent moved for judgment on the pleadings on the grounds that Mr. Harrison's claim is improperly exhausted the therefore procedurally defaults. Alternatively, Respondent argues that Mr. Harrison's claim is without merit. (Doc. 10).

For the reasons discussed below, this court respectfully recommends granting Respondent's Motion (Doc. 10) and dismissing Mr. Harrison's 2254 habeas petition (Doc. 1).

## DISCUSSION

### I. Applicable Legal Standards

#### A. Principles Generally Applicable to § 2254 Petitions

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Such petitions are governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, federal courts may exercise only a "limited and deferential review of underlying state court decisions." Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal

law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000).  A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. Id. at 411. "Rather, that application must also be unreasonable." Id.

### B.   State Court Exhaustion and Procedural Default

Under AEDPA, federal habeas review of state court convictions is limited to claims the petitioner previously presented to the state courts for consideration:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>   (A) the applicant has exhausted the remedies available in the courts of the state; or
>   (B)   (i) there is an absence of available State corrective process; or
>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> * * *
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  If a ground for relief in the petitioner's claim makes factual or legal arguments that were not

4

present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Id. at 518 (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)).

The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b). Therefore, federal courts should dismiss a petition that contains claims which the petitioner did not exhaust at the state level. See 28 U.S.C. § 2254; Rose, 455 U.S. at 522. "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993). The exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995).

II. **Mr. Harrison Failed to Exhaust State Remedies**

When a petitioner fails to exhaust state remedies, the federal court normally should dismiss the petition without prejudice to allow the petitioner

5

to properly exhaust his remedies.  Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).  "However, such dismissal is not an appropriate course of action where there are no nonfutile avenues of relief available to the petitioner in state court."  Kurtenbach v. Dooley, No. 5:15-CV-05063-JLV, 2016 WL 11407827, at *8 (D.S.D. July 28, 2016), report and recommendation adopted, No. CV 15-5063-JLV, 2016 WL 5135915 (D.S.D. Sept. 21, 2016).  Here, no further avenues of nonfutile relief are available to Mr. Harrison in state court.

Judge Craig A. Pfiefle of the Seventh Judicial Circuit Court for the State of South Dakota held in his denial of Mr. Harrison's state habeas petition the following:

> Consequently, any claim that was or could have been raised on direct appeal is barred by res judicata and not cognizable in a habeas action. Petitioner's claim that the court did not have jurisdiction over him could have been raised on direct appeal but, as noted above, Petitioner did not appeal.  As a result, the claim is barred by res judicata.
>
> Even though the claim is barred by res judicata, it is worth pointing out that this Court does not lack jurisdiction over enrolled tribal members who are charged with violating state laws in Pennington, Custer, or Fall River Counties as said counties are no longer part of a reservation.

Harrison v. Fluke, 16CIV20-000082 at p. 4.

The court agrees with Judge Craig A. Pfiefle's reasoning and as such, the court finds that Mr. Harrison has procedurally defaulted by failing to raise the jurisdictional challenge on a direct appeal.  Because Mr. Harrison is barred to seek state review of his claims, the court recommends the petition be dismissed with prejudice.

However, even assuming Mr. Harrison presents a habeas claim that is not procedurally barred, his claim still fails on the merit.

### III. Mr. Harrison's § 2254 Habeas Petition Fails on the Merits.

Defendant argues the State of South Dakota, specifically the Custer County court lacks personal jurisdiction in this matter because the land upon which the alleged crime occurred should be considered "Indian country" for jurisdictional purposes. (Docs. 1, 1-1). Defendant further argues that all land west of the Missouri River was set aside as Indian County in the Fort Laramie Treaty of 1868 and that only Congress can change the boundaries of Indian Country, which Congress has not done. (Docs. 1, 1-1). In support of this contention, the defendant cites the Supreme Court case of McGirt v. Oklahoma, 140 S.Ct. 2452 (2020). However, McGirt is distinguishable from this situation and will not deprive the State of South Dakota or Custer County of personal jurisdiction over the defendant.

In McGirt, the Supreme Court found that the Creek Reservation, although heavily divided through allotment, was never disestablished or diminished. This meant that all the land that initially made up the original reservation was still considered Indian country in the eyes of the law. Integral in the Court's decision was the fact that Congress had never expressly disestablished or diminished the original Creek Reservation established in 1833.

The McGirt Court makes it very clear that Congress has the sole authority to disestablish or diminish a reservation. "'[O]nly Congress can

7

divest a reservation of its land and diminish its boundaries.'" Id. at 2462 (quoting Solem v. Bartlett, 465 U.S. 463, 470 (1984)).  This power, though only held by Congress, is quite important and can have far-reaching consequences. "[T]he Legislature wields significant constitutional authority when it comes to tribal relations, possessing even the authority to breach its own promises and treaties."  Id.  (citing Lone Wolf v. Hitchcock, 187 U.S. 553, 566–68 (1903)). However, because this power is so significant, when disestablishing or diminishing a reservation, Congress must "clearly express its intent to do so, '[c]ommon[ly with an] [e]xplicit reference to cession or other language evidencing the present and total surrender of all tribal interests.'"  Id. at 2463 (quoting Nebraska v. Parker, 577 U.S. 481, 488 (2016)).

After analyzing Congress' acts affecting the Creek Nation, the McGirt Court concluded Congress did not at any time explicitly disestablish the reservation as outlined by the 1866 Treaty with the Creek.  Id. at 2464. "[B]ecause there exists no equivalent law [after the 1866 Treaty, ceding and conveying a portion of the reservation to the United States,] terminating what remained, the Creek Nation survived allotment."  Id.  Therefore, the Creek Reservation extends to the boundaries established by the 1866 Treaty, and that land is Indian country.  Id. at 2482.  Defendant argues that like in McGirt, "Congress has not passed any Act that clearly deminished [sic] the land set as the Reservation in the Fort Laramie Treaty." (Doc. 1-1, p. 15).

Defendant is incorrect.  The Great Sioux Reservation has a somewhat different history than the Creek Reservation in McGirt.  Established by the Fort

8

Laramie Treaty of 1868, the Black Hills and surrounding areas were set aside for the use of the Sioux Nation.  See United States v. Sioux Nation of Indians, 448 U.S. 371, 376 (1980).  In 1877, however, Congress enacted an "agreement" with the Sioux Nation into law.  Id. at 381-83.  This "1877 Act," a rider to an appropriations bill, specifically abrogated the Fort Laramie Treaty and relinquished the Sioux Nation's rights to the Black Hills.  Id.  In exchange for the cessation of those lands, the Government offered subsistence rations for as long as needed.  Id.  Ensuing litigation in the Indian Claims Commission, the Court of Claims, and ultimately, the United States Supreme Court, led to the Sioux Nation opinion holding that the 1877 Act effected a taking of tribal property, which required the United States to make just compensation to the Sioux Nation.  Id. at 424.

      Here, Congress has done more than allotted Great Sioux Reservation land.  Congress has expressly abrogated the Fort Laramie Treaty and diminished the Great Sioux Reservation.  As a result, the exterior borders are as set out in the 1877 Act, not the Fort Laramie Treaty.  Therefore, the land upon which the alleged crime occurred is not considered "Indian country" as it is located outside the remaining South Dakota reservations, so the State of South Dakota and Custer County retain personal jurisdiction over the defendant.  Mr. Harrison's habeas claim fails on the merits.

## CONCLUSION

Based on the foregoing reasons, the court respectfully recommends that Respondents' Motion for Judgment on the Pleadings (Doc. 10) be granted and Mr. Harrison's § 2254 petition (Doc. 1) be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 16th day of March, 2022.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge